

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# FELONY

INDICTMENT FOR CONSPIRACY TO
DEFRAUD THE UNITED STATES AND UNLAWFUL RECEIPT
OR POSSESSION OF FEDERAL CERTIFICATE, LICENSE, OR DOCUMENT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-134 |
| v. | * | SECTION: SECT. M MAG. 3 |
| DOROTHY SMITH | * | VIOLATIONS: 18 U.S.C. § 371 |
| ELDRIDGE JOHNSON | | 18 U.S.C. § 2197 |
| BEVERLY MCCRARY | * | |
| ALEXIS BELL | | |
| MICHEAL WOOTEN | * | |
| a/k/a "Michael Wooten" | | |
| SHARRON ROBINSON | * | |
| ALONZO WILLIAMS | | |
| JONATHAN ABBEY | * | |
| RAFAEL ATKINS | | |
| ANTHONY BROWN | * | |
| JAMES CARR | | |
| CHARLES FRANKS | * | |
| JERRY FUDGE | | |
| DAVID GALVAN | * | |
| JUSTIN GANDY | | |
| ANTHONY GARCES | * | |
| CARDELL HUGHES | | |
| HARRY JOHNSON | * | |
| EDWARD JONES | | |
| ALEXIA LOVETT | * | |
| BRANDON MACK | | |
| HUGO MARQUEZ | * | |
| MILES MARTS | | |
| DEVERICK MORROW | * | |
| FREDRICK NETTLES | | |
| STINSON PAYNE | * | |
| OCTAVIAN RICHARDS | | |
| QUANG TRAN | * | |
| ANTWAINE TRAVIS | | |
| SHUNMANIQUE WILLIS | * | |
| ROBERT WINTERS | | |
| * * * | | |

The Grand Jury charges that:

## COUNT 1
### (Conspiracy to defraud the United States)

**A.  AT ALL TIMES MATERIAL HEREIN:**

1. The United States Coast Guard was an agency of the United States government charged with, among other things, the superintendence of the U.S. Merchant Marine. In executing this responsibility, the Coast Guard prescribed regulations and developed policy to ensure that maritime vessels were safely manned with qualified and competent mariners.

2. The United States Coast Guard's governmental functions, as authorized by federal statutes and regulations ("federal law"), included, among other things, the administration, regulation, and enforcement of the regulations and laws relating to the issuance of merchant mariner credentials ("MMCs") and related endorsements, including the applications and examinations associated with MMCs and endorsements.

3. Under federal law, all mariners employed aboard United States merchant vessels greater than 100 gross registered tonnage, with a few limited exceptions, were required to have valid MMCs. Furthermore, to serve in various positions, federal law required mariners to have particular endorsements added to their MMCs.

4. In order to obtain an MMC, a mariner was required to meet various requirements and to take an oath, promising to faithfully and honestly perform all the duties required by the laws of the United States.

5. Endorsements determined what position mariners could work, on what kind of vessels, and in what waters. The presence of an endorsement on an MMC indicated that the mariner was qualified to serve in the specified capacity and had met all legal requirements for that endorsement. Federal law prohibited a mariner from serving in a position for which the mariner

lacked the required endorsement. Similarly, federal law prohibited a business from employing a mariner in a position for which the mariner lacked the required endorsement.

6. Endorsements were generally divided into two categories: rating endorsements and officer endorsements. Rating endorsements related to lower-level positions on vessels, such as able seaman and qualified member of the engine department. Officer endorsements related to the higher- and highest-level positions on vessels, and included, among other positions, the following:

(a) *master* (also known as the captain, the officer having command of a vessel and is ultimately held responsible for the safety of the crew, vessel, cargo and all aspects of the vessel's operation);

(b) *chief mate* (the officer in charge of the deck department, typically responsible for, among other things, navigation, keeping watch of the bridge, cargo, stability calculations, being the medical person in charge, and assuming command of the vessel if the master is unable to fulfill the master's duties);

(c) *second mate* (second only to the chief mate in the deck department, typically responsible for, among other things, being the navigation officer, voyage plans, keeping watch of the bridge, and maintaining lifesaving equipment);

(d) *third mate* (typically responsible for, among other things, navigation, keeping watch of the bridge, and maintaining fire safety equipment);

(e) *chief engineer* (the officer in charge of the engine department, typically responsible for, among other things, all operations and maintenance having to do with engineering and mechanical equipment throughout the ship);

(f) *first assistant engineer* (second only to the chief engineer in the engine department, typically responsible for, among other things, the upkeep of machinery, the manning and supervision of the engine room, and keeping watch of the engine room);

(g) *second assistant engineer* (typically responsible for, among other things, keeping watch of the engine room, being in charge of transferring fuel, fuel operations, and fuel oil purifier, and overseeing a particular area of the engine department such as generators or boilers);

(h) *third assistant engineer* (typically responsible for, among other things, keeping watch of the engine room, and overseeing generators, the sewage system, and lube oil purifier).

7. For many endorsements, federal law required mariners to pass United States Coast Guard-administered examinations. These examinations tested mariners' knowledge and training to safely operate under the authority of the endorsements. The examinations, which typically consisted of numerous separately-graded modules, were administered at United States Coast Guard regional exam centers. One such regional exam center, known as REC New Orleans, was located in Mandeville, Louisiana, in the Eastern District of Louisiana. United States Coast Guard employees at the regional exam centers entered the scores into a United States Coast Guard computer system used to manage the issuance of credentials to mariners and to process applications for MMCs and endorsements.

8. In some situations, passing an examination for one endorsement could enable a mariner to obtain one or more additional endorsements. This could occur, for example, if the examination fulfilled a requirement for an additional endorsement or if obtaining the tested-for endorsement fulfilled a requirement for an additional endorsement.

4

9. **DOROTHY SMITH** was employed by the United States Coast Guard as a credentialing specialist at REC New Orleans until in or about August 2019. In that position, **DOROTHY SMITH's** duties included, among other things, processing merchant mariner credential applications. As a credentialing specialist, **DOROTHY SMITH** was also authorized to perform the duties of an examination administrator, a lower-level position than credentialing specialist. These examination administrator duties included, among other things, proctoring examinations, entering examination scores in a United States Coast Guard computer system, and reporting examination results to a United States Coast Guard office that issued endorsements.

10. **BEVERLY MCCRARY** was employed by the United States Coast Guard as a credentialing specialist at REC New Orleans until in or about August 2015.

11. **ELDRIDGE JOHNSON** was employed by the United States Coast Guard as an examination administrator at REC New Orleans until in or about January 2018.

12. **ALEXIS BELL** worked in the maritime industry and possessed an MMC since in or about July 2009.

13. **MICHEAL WOOTEN a/k/a "Michael Wooten"** worked in the maritime industry and possessed an MMC since in or about April 2012.

14. **SHARRON ROBISNON** worked in the maritime industry and possessed an MMC since in or about March 2012.

15. **ALONZO WILLIAMS** worked in the maritime industry and possessed an MMC since in or about November 2010.

16. Each of the following individuals was a credentialed mariner who sought to add an officer-level endorsement to his or her MMC: **JONATHAN ABBEY, RAFAEL ATKINS, ANTHONY BROWN, JAMES CARR, CHARLES FRANKS, JERRY FUDGE, DAVID**

5

GALVAN, JUSTIN GANDY, ANTHONY GARCES, CARDELL HUGHES, HARRY JOHNSON, EDWARD JONES, ALEXIA LOVETT, BRANDON MACK, HUGO MARQUEZ, MILES MARTS, DEVERICK MORROW, FREDRICK NETTLES, STINSON PAYNE, OCTAVIAN RICHARDS, QUANG TRAN, ANTWAINE TRAVIS, SHUNMANIQUE WILLIS, and ROBERT WINTERS.

**B.     THE CONSPIRACY:**

Beginning at a time unknown, but prior to April 6, 2012, and continuing until in or about May 2019, in the Eastern District of Louisiana and elsewhere, the defendants, **DOROTHY SMITH, ELDRIDGE JOHNSON, BEVERLY MCCRARY, ALEXIS BELL, MICHEAL WOOTEN a/k/a "Michael Wooten," SHARRON ROBINSON,** and **ALONZO WILLIAMS** knowingly and willfully conspired and agreed together and with each other, and with other persons both known and unknown to the grand jury, to defraud the United States of and concerning its governmental functions and rights, hereafter described, that is:

(a)     of and concerning its right to have its business and its affairs, and particularly the transaction of the official business of the United States Coast Guard (including official business related to examinations that tested merchant mariners' knowledge and training to safely operate under the authority of endorsements), conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment, and obstruction;

(b)     of and concerning its right to have its officers and employees, and particularly the personnel of the United States Coast Guard, free to transact the official business of the United States unhindered, unhampered, unobstructed, and unimpaired by the exertion upon them of dishonest, corrupt, unlawful, improper and undue pressure and influence;

(c)  of and concerning its right and governmental function of issuing MMCs and related endorsements through and by means of its officers and employees in the United States Coast Guard unhindered, unhampered, unobstructed, and unimpaired by the exertion upon such officers and employees of dishonest, unlawful, corrupt, improper and undue pressure and influence; and

(d)  of and concerning its right to the conscientious, loyal, faithful, disinterested, and unbiased services, decisions, actions, and performance of their duties by the defendants **DOROTHY SMITH** and **BEVERLY MCCRARY** in their official capacities as United States Coast Guard employees free from corruption, partiality, improper influence, bias, dishonesty, and fraud.

### C.  MANNER AND MEANS OF THE CONSPIRACY:

1.  It was a part of the conspiracy that the defendants would by deceit, craft, trickery, and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the United States Coast Guard, in that the defendants would cause to be reported to the United States Coast Guard false representations that credential applicants had appeared for examinations, had passed examinations, had achieved certain examination module scores, had fulfilled certain requirements for endorsements, and should receive certain endorsements and credentials.

2.  It was further a part of the conspiracy that **DOROTHY SMITH**, in her position as a United States Coast Guard employee, would falsely report to the United States Coast Guard that credential applicants had appeared for examinations required for certain endorsements, had passed such examinations, had achieved certain examination module scores, had fulfilled certain requirements for endorsements, and should receive certain endorsements.

3. It was further a part of the conspiracy that **DOROTHY SMITH** would demand, seek, receive, accept, and agree to receive and accept money in return for falsely reporting to the United States Coast Guard that credential applicants had appeared for examinations required for certain endorsements, had passed such examinations, had achieved certain examination module scores, had fulfilled certain requirements for endorsements, and should receive certain endorsements.

4. It was further a part of the conspiracy that **DOROTHY SMITH** would interact directly with coconspirator credential applicants.

5. It was further a part of the conspiracy that **DOROTHY SMITH** would use a network of intermediaries to communicate with, and receive money from, coconspirator credential applicants.

6. It was further a part of the conspiracy that **ELDRIDGE JOHNSON**, following his employment with the United States Coast Guard, **BEVERLY MCCRARY**, during and following her employment with the United States Coast Guard, **ALEXIS BELL**, **MICHEAL WOOTEN** a/k/a "Michael Wooten," **SHARRON ROBINSON**, and **ALONZO WILLIAMS** were part of **DOROTHY SMITH's** network of intermediaries.

7. It was further a part of the conspiracy that **ELDRIDGE JOHNSON, BEVERLY MCCRARY, ALEXIS BELL, MICHEAL WOOTEN** a/k/a "Michael Wooten," **SHARRON ROBINSON**, and **ALONZO WILLIAMS** would directly and indirectly solicit and recruit credential applicants to participate in the conspiracy.

8. It was further a part of the conspiracy that **ELDRIDGE JOHNSON, BEVERLY MCCRARY, ALEXIS BELL, MICHEAL WOOTEN** a/k/a "Michael Wooten," **SHARRON ROBINSON**, and **ALONZO WILLIAMS** would directly and indirectly demand, seek, receive,

accept, and agree to receive and accept money from credential applicants in return for causing, and for agreeing to cause, false reports to the United States Coast Guard that said credential applicants had appeared for examinations required for certain endorsements, had passed such examinations, had achieved certain examination module scores, had fulfilled certain requirements for endorsements, and should receive certain endorsements.

9. It was further a part of the conspiracy that **ELDRIDGE JOHNSON, BEVERLY MCCRARY, ALEXIS BELL, MICHEAL WOOTEN a/k/a "Michael Wooten," SHARRON ROBINSON**, and **ALONZO WILLIAMS** would directly and indirectly communicate to **DOROTHY SMITH** the identities of coconspirator credential applicants that desired false reports to be made to the United States Coast Guard for the purpose of said applicants obtaining MMC endorsements.

10. It was further a part of the conspiracy that **ELDRIDGE JOHNSON, BEVERLY MCCRARY, ALEXIS BELL, MICHEAL WOOTEN a/k/a "Michael Wooten," SHARRON ROBINSON**, and **ALONZO WILLIAMS** would directly and indirectly, corruptly give, offer, and promise money to **DOROTHY SMITH**, in exchange for **DOROTHY SMITH** falsely reporting, and agreeing to falsely report, to the United States Coast Guard that credential applicants had appeared for examinations required for certain endorsements, had passed such examinations, had achieved certain examination module scores, had fulfilled certain requirements for endorsements, and should receive certain endorsements.

11. It was further a part of the conspiracy that **ALEXIS BELL, MICHEAL WOOTEN a/k/a "Michael Wooten," SHARRON ROBINSON, ALONZO WILLIAMS**, and other coconspirator credential applicants obtained unearned endorsements through **DOROTHY SMITH's** false reports to the United States Coast Guard.

12. It was further a part of the conspiracy that coconspirator credential applicants used endorsements obtained through **DOROTHY SMITH's** false reports to obtain additional unearned endorsements.

13. It was further a part of the conspiracy that coconspirator credential applicants applied for and obtained renewal MMCs and duplicate MMCs containing unearned endorsements.

14. It was further a part of the conspiracy that coconspirator credential applicants obtained unearned endorsements through **DOROTHY SMITH's** false reports for positions including, among others, master, chief mate, second mate, third mate, chief engineer, first assistant engineer, second assistant engineer, and third engineer, including such endorsements that imposed no limitation as to vessel weight and vessel horsepower.

D.   **OVERT ACTS:**

In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Eastern District of Louisiana and elsewhere:

On or about each of the below-listed dates, at REC New Orleans, **DOROTHY SMITH**, falsely reported to the United States Coast Guard that the below-indicated credential applicant had passed an examination required for an officer endorsement and had achieved certain passing module scores, all of which caused, and was essential to, the credential applicant's receipt of the endorsement:

| OVERT ACT | DATE | APPLICANT |
|---|---|---|
| 1 | 9/13/2013 | RAFAEL ATKINS |
| 2 | 10/29/2013 | MILES MARTS |
| 3 | 4/18/2014 | BRANDON MACK |
| 4 | 4/22/2014 | JONATHAN ABBEY |
| 5 | 12/9/2014 | HUGO MARQUEZ |
| 6 | 1/9/2015 | FREDRICK NETTLES |
| 7 | 1/23/2015 | RAFAEL ATKINS |
| 8 | 7/17/2015 | MILES MARTS |
| 9 | 7/24/2015 | FREDRICK NETTLES |

| 10 | 1/5/2016 | JONATHAN ABBEY |
|---|---|---|
| 11 | 2/8/2016 | CHARLES FRANKS |
| 12 | 2/19/2016 | EDWARD JONES |
| 13 | 2/22/2016 | FREDRICK NETTLES |
| 14 | 6/21/2016 | DEVERICK MORROW |
| 15 | 7/27/2016 | JUSTIN GANDY |
| 16 | 7/28/2016 | JAMES CARR |
| 17 | 12/2/2016 | JERRY FUDGE |
| 18 | 8/28/2017 | QUANG TRAN |
| 19 | 10/13/2017 | JAMES CARR |
| 20 | 4/12/2018 | ANTHONY BROWN |
| 21 | 5/4/2018 | HARRY JOHNSON |
| 22 | 6/21/2018 | ALEXIA LOVETT |
| 23 | 7/24/2018 | ANTHONY GARCES |
| 24 | 8/13/2018 | OCTAVIAN RICHARDS |
| 25 | 12/6/2018 | DAVID GALVAN |
| 26 | 12/11/2018 | ROBERT WINTERS |
| 27 | 2/6/2019 | SHUNMANIQUE WILLIS |
| 28 | 2/8/2019 | ANTWAINE TRAVIS |
| 29 | 4/17/2019 | JERRY FUDGE |
| 30 | 4/26/2019 | STINSON PAYNE |
| 31 | 5/1/2019 | CARDELL HUGHES |

32. On or about April 6, 2012, **SHARRON ROBINSON** caused **DOROTHY SMITH** to falsely report in a United States Coast Guard computer system that **SHARRON ROBINSON** had passed an examination and had achieved certain passing module scores required to obtain a rating endorsement.

33. On or about January 31, 2014, **ALEXIS BELL** caused **DOROTHY SMITH** to falsely report in a United States Coast Guard computer system that **ALEXIS BELL** had passed an examination and had achieved certain passing module scores required to obtain an officer endorsement.

34. On or about June 13, 2014, **MICHEAL WOOTEN** a/k/a "Michael Wooten" caused **DOROTHY SMITH** to falsely report in a United States Coast Guard computer system that **MICHEAL WOOTEN** a/k/a "Michael Wooten" had passed an examination and had

achieved certain passing module scores required to obtain an officer endorsement.

35. In or about November 2014, **SHARRON ROBINSON** formed an agreement with a credential applicant for the purpose of that credential applicant obtaining false passing examination scores.

36. On or about December 19, 2014, **ALEXIS BELL** caused **DOROTHY SMITH** to falsely report in a United States Coast Guard computer system that **ALEXIS BELL** had passed an examination and had achieved certain passing module scores required to obtain an officer endorsement.

37. On or about June 19, 2015, **ALEXIS BELL** caused **DOROTHY SMITH** to falsely report in a United States Coast Guard computer system that **ALEXIS BELL** had passed an examination and had achieved certain passing module scores required to obtain an officer endorsement.

38. In or about January 2016, **MICHEAL WOOTEN a/k/a "Michael Wooten"** formed an agreement with a credential applicant for the purpose of that credential applicant obtaining false passing examination scores.

39. On or about March 30, 2017, **ALEXIS BELL** sent an email to **BEVERLY MCCRARY** containing information identifying a credential applicant for the purpose of that credential applicant obtaining false passing examination scores.

40. On or about October 6, 2017, **BEVERLY MCCRARY** received approximately $1,500 from a credential applicant via a money transfer service for the purpose of that credential applicant obtaining false passing examination scores.

41. On or about April 9, 2018, **ALONZO WILLIAMS** caused **DOROTHY SMITH** to falsely report in a United States Coast Guard computer system that **ALONZO WILLIAMS**

had passed an examination and had achieved certain passing module scores required to obtain an officer endorsement.

42. On or about July 18, 2018, **ALONZO WILLIAMS** paid approximately $3,500 to **ALEXIS BELL** via an electronic money transfer for the purpose of a credential applicant obtaining false passing examination scores.

43. On or about May 1, 2019, **ELDRIDGE JOHNSON** paid approximately $1,000 to **DOROTHY SMITH** via an electronic money transfer for the purpose of a credential applicant obtaining false passing examination scores.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 THROUGH 25
(Unlawful receipt or possession of federal certificate, license, or document)

A. **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Section A of Count 1 and the second paragraph and accompanying chart of Section D of Count 1 are re-alleged and incorporated as if fully set forth herein.

B. **RECEIPT AND POSSESSION OF A CERTIFICATE, LICENSE & DOCUMENT:**

During the time periods indicated below, in the Eastern District of Louisiana and elsewhere, each below-named defendant did knowingly, intentionally, and willfully receive and possess merchant mariner credentials and endorsements, to which said defendant was not lawfully entitled, with the intent to unlawfully use said credential and endorsement.

| COUNT | DEFENDANT | BEGINNING ON OR ABOUT | CONTINUING UNTIL ON OR ABOUT |
|---|---|---|---|
| 2 | JONATHAN ABBEY | 4/22/2014 | 3/2/2020 |
| 3 | RAFAEL ATKINS | 9/13/2013 | 8/21/2020 |
| 4 | ANTHONY BROWN | 4/12/2018 | 12/10/2019 |
| 5 | JAMES CARR | 7/28/2016 | 12/27/2019 |
| 6 | CHARLES FRANKS | 2/8/2016 | 12/4/2019 |

| 7 | JERRY FUDGE | 12/2/2016 | 6/11/2019 |
|---|---|---|---|
| 8 | DAVID GALVAN | 12/6/2018 | 10/22/2019 |
| 9 | JUSTIN GANDY | 7/27/2016 | 9/17/2020 |
| 10 | ANTHONY GARCES | 7/24/2018 | 12/20/2019 |
| 11 | CARDELL HUGHES | 5/1/2019 | 7/2/2019 |
| 12 | HARRY JOHNSON | 5/4/2018 | 9/25/2019 |
| 13 | EDWARD JONES | 2/19/2016 | 7/13/2020 |
| 14 | ALEXIA LOVETT | 6/21/2018 | 10/2/2019 |
| 15 | BRANDON MACK | 4/18/2014 | 9/8/2020 |
| 16 | HUGO MARQUEZ | 12/9/2014 | 1/1/2020 |
| 17 | MILES MARTS | 10/29/2013 | 8/28/2020 |
| 18 | DEVERICK MORROW | 6/21/2016 | 2/5/2020 |
| 19 | FREDRICK NETTLES | 1/9/2015 | 3/3/2020 |
| 20 | STINSON PAYNE | 4/26/2019 | 6/11/2019 |
| 21 | OCTAVIAN RICHARDS | 8/13/2018 | 11/13/2019 |
| 22 | QUANG TRAN | 8/28/2017 | 12/23/2019 |
| 23 | ANTWAINE TRAVIS | 2/8/2019 | 8/6/2019 |
| 24 | SHUNMANIQUE WILLIS | 2/6/2019 | 10/3/2019 |
| 25 | ROBERT WINTERS | 12/11/2018 | 11/19/2019 |

All in violation of Title 18, United States Code, Section 2197.

A TRUE BILL:

FOREPERSON

MICHAEL M. SIMPSON
Attorney for the United States
Acting Under the Authority
Conferred by 28 U.S.C. § 515

CHANDRA MENON
Assistant United States Attorney

New Orleans, Louisiana
November 20, 2020

14

No. _____

# UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

Criminal _____ Division

## THE UNITED STATES OF AMERICA

vs.

DOROTHY SMITH
ELDRIDGE JOHNSON
BEVERLY MCCRARY
ALEXIS BELL
MICHEAL WOOTEN
  a/k/a "Michael Wooten"
SHARRON ROBINSON
ALONZO WILLIAMS
JONATHAN ABBEY
RAFAEL ATKINS
ANTHONY BROWN
JAMES CARR
CHARLES FRANKS
JERRY FUDGE
DAVID GALVAN
JUSTIN GANDY
ANTHONY GARCES
CARDELL HUGHES
HARRY JOHNSON
EDWARD JONES
ALEXIA LOVETT
BRANDON MACK
HUGO MARQUEZ
MILES MARTS
DEVERICK MORROW
FREDRICK NETTLES
STINSON PAYNE
OCTAVIAN RICHARDS
QUANG TRAN
ANTWAINE TRAVIS
SHUNMANIQUE WILLIS
ROBERT WINTERS

## INDICTMENT

FOR CONSPIRACY TO DEFRAUD THE UNITED STATES AND UNLAWFUL RECEIPT OR POSSESSION OF FEDERAL CERTIFICATE, LICENSE, OR DOCUMENT

VIOLATIONS:    18 U.S.C. § 371
                  18 U.S.C. § 2197

A true bill.

_____
Foreperson

Filed in open court this _____ day of _____ A.D. 2020.

_____
Clerk

Bail, $ _____

CHANDRA MENON
Assistant United States Attorney